J-A33003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JIMMY JERMAINE POTTS, JR. | |
| Appellant | No. 9 EDA 2014 |

Appeal from the Judgment of Sentence November 26, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001123-2012

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 03, 2015**

Jimmy Jermaine Potts, Jr., appeals from the judgment of sentence imposed by the Court of Common Pleas of Chester County after a jury convicted him of murder of the first degree,[1] two counts of attempt to commit criminal homicide,[2] two counts of aggravated assault,[3] possessing an instrument of crime,[4] five counts of recklessly endangering another person,[5] and criminal conspiracy.[6]  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. §§ 901(a), 2501.

[3] 18 Pa.C.S. § 2702(a)(1).

[4] 18 Pa.C.S. § 907(a).

At approximately 2:00 a.m. on January 27, 2012, Towayne Uqdah, his cousin Andre Tutt and Kevin Morgan were walking toward Morgan's car, which was parked on a street in West Chester. Two men ran up to them, yelled at them not to move, and then started shooting. Tutt ran away and was shot once. Uqdah was shot nine times, and died from his injuries.

Police arrested Potts and Greg Arrington for the shootings. Arrington subsequently pled guilty to the murder of Uqdah.

Potts' trial began on September 30, 2013, and ended on October 3, 2013, when the jury found him guilty of the above-referenced charges. On November 26, 2013, the court sentenced Potts to life imprisonment plus 27 to 54 years' incarceration.

This timely appeal followed, in which Potts raises the following issues for our review:

1. Did the trial court err in prohibiting the defense from questioning Jalen Newton about Newton's gun purchases with codefendant and convicted murderer Gregory Arrington?

2. Did the trial court err in prohibiting the defense from questioning eyewitness Andre Tutt about Tutt's prior manipulation of the justice system?

Appellant's Brief, at 7.

"The decision to admit or exclude evidence is within the discretion of the trial court and will not be reversed absent an abuse of that discretion."

*(Footnote Continued)* ————————————

[5] 18 Pa.C.S. § 2705.

[6] 18 Pa.C.S. § 903(c).

*Commonwealth v. Patterson*, 91 A.3d 55, 74 (Pa. 2014) (citation omitted). A finding of abuse of discretion may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Laird*, 988 A.2d 618, 636 (Pa. 2010) (citation and quotation marks omitted).

At trial, the Commonwealth called Jalen Newton as a witness. Newton, a close friend of Arrington who sold drugs with him, lived in Downingtown. He testified that shortly after 2:00 a.m. on January 27, 2012, Arrington called him several times on his cell phone. Arrington and Potts then drove to Newton's house, where they discussed the shooting in West Chester.

On cross-examination, Newton testified that he and Arrington sent frequent text messages to each other in January 2012. In response to the question, "And it's correct, isn't it, that you were also talking with [Arrington] about buying a gun," Newton replied, "I don't remember." N.T. Trial, 10/1/13, at 232. When defense counsel sought to refresh Newton's recollection by showing him copies of the text messages, the Commonwealth objected based on relevance.

The following exchange took place out of the presence of the jury:

The Court: The relevance then?

Counsel: Your Honor, it goes to Mr. Newton's motivation to lie to the police about his involvement in this matter, as

> > > well as Mr. Potts' involvement and/or Mr. Arrington's involvement.
>
> > The Court: And what does buying a gun have to do with any of that?
>
> > Counsel: That Mr. Newton has every motivation to ingratiate himself with the police, make it seem as though he wasn't a part of this, when in fact he and Mr. Arrington were discussing purchasing a firearm just about a week before it happened.

*Id.* at 233-34.

Potts argues that the trial court erred by sustaining the Commonwealth's objection, thus precluding him from continuing this line of questioning. He repeatedly states in his brief that evidence of a conversation between Newton and Arrington about the purchase of a gun is relevant. However, he never explains why it meets the test of relevance, namely, that the evidence has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. *See* Pa.R.E. 401. As the trial court correctly notes, "Whether or not . . . Newton and . . . Arrington discussed purchasing a firearm a week prior to the incident in question is a collateral matter, totally unrelated to whether [Potts] committed first degree murder by shooting . . . Uqdah." Trial Court Opinion, 3/27/14, at 4.

It is well settled that "a trial court may properly preclude cross-examination on collateral matters that are unrelated to the issues at trial." *Commonwealth v. Dowling*, 778 A.2d 683, 687 (Pa. Super. 2001)

(citation omitted). Accordingly, the trial court did not abuse its discretion by precluding counsel from questioning Potts about the purchase of a gun.

At trial, the Commonwealth also called Andre Tutt, who testified that Potts was one of the people who shot at him. N.T. Trial, 10/2/13, at 359. On cross-examination, Tutt stated that he was going to "slide" on pending robbery charges. *Id.* at 369. When asked by defense counsel if he had "slid" before on previous charges, he responded, "I have no felonies, no misdemeanors, nothing." *Id.* at 370. Defense counsel then stated, "It doesn't mean you haven't been accused." *Id.* The Commonwealth objected, and the court sustained the objection.

Potts argues that the trial court abused its discretion by not allowing him to cross-examine Tutt about accusations of criminal activity because Tutt "has a strong potential self-interest in [Potts'] case." Appellant's Brief, at 15. He notes that Tutt's "prior 'slides' from criminal charges show that he has inappropriately manipulated the judicial system when it was in his self-interest." *Id.*

The credibility of a witness may be impeached by evidence that the witness has committed a crime if it involved dishonesty or false statement. Pa.R.E. 609. However, a witness may not be impeached by evidence of criminal activity that did not lead to a conviction. ***Commonwealth v. Jackson***, 381 A.2d 438 (Pa. 1977). Accordingly, the trial court did not

abuse its discretion when it precluded the Commonwealth from questioning Tutt about whether he had been accused of committing crimes.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2015

---

[7] In the argument section of his brief corresponding to Issue 2 (Did the trial court err in prohibiting the defense from questioning eyewitness Andre Tutt about Tutt's prior manipulation of the justice system?) Potts states, "When the defense attempted to elicit . . . Tutt's prior inconsistent statements to the authorities, the objection by the Assistant District Attorney was sustained." Appellant's Brief, at 13-14. Potts includes no argument on the issue of prior inconsistent statements, and accordingly, it is waived. **See Commonwealth v. Furrer**, 48 A.3d 1279, 1281 n.3 (Pa. Super. 2012).